Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
02/03/2026
CT Log Number 551276504

## Service of Process Transmittal Summary

**TO:**     Maria Osusa
           Otis Elevator Company
           ONE CARRIER PLACE
           FARMINGTON, CT 06032-2572

**RE:**     **Process Served in Florida**

**FOR:**    Otis Elevator Company  (Domestic State: NJ)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | Re: STEPHANIE JERNIGAN // To: Otis Elevator Company |
| **CASE #:** | 2026CA000151 |
| **NATURE OF ACTION:** | Property Damage Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, Plantation, FL |
| **DATE/METHOD OF SERVICE:** | By Process Server on 02/03/2026 at 13:36 |
| **JURISDICTION SERVED:** | Florida |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/04/2026, Expected Purge Date: 02/09/2026 |
| | Image SOP |
| | Email Notification,  Brenda Jacobs  brenda.jacobs@otis.com |
| | Email Notification,  Maria Osusa  maria.osusa@otis.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 1200 South Pine Island Road |
| | Plantation, FL 33324 |
| | 8775647529 |
| | MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



## PROCESS SERVER DELIVERY DETAILS

**Date:**                           Tue, Feb 3, 2026

**Server Name:**               Eric Deal

| Entity Served | Otis Elevator Company |
|---|---|
| Case Number | **2026 CA 000151** |
| Jurisdiction | FL |

| Inserts | | |
|---|---|---|
| | | |



## IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

STEPHANIE JERNIGAN
        PLAINTIFF,

Vs.
                                      CASE NO: **2026 CA 000151**
                                      DIVISION: **F-CIVIL**

OTIS ELEVATOR COMPANY
        DEFENDANT,

SUMMONS

**THE STATE OF FLORIDA:**
**To Each Sheriff of the State:**

**YOU ARE COMMANDED** to serve this summons and a copy of the complaint in the above styled cause upon the defendant **OTIS ELEVATOR COMPANY C/O CT CORPORATION SYSTEM, AS RA 1200 SOUTH PINE ISLAND ROAD PLANTATION, FL 33324**

Each defendant is hereby required to serve written defenses to said complaint on plaintiff's attorney(s), whose address is

    **SHANE MICHAEL DEAN**
    **119 W GARDEN STREET STE 100**
    **PENSACOLA, FL 32502**

**Date:** 2-3-26    **Time:** 1:30 PM

**Eric Deal**      **S.P.S. 336**

within **20 days** after service of this summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on said attorney or immediately thereafter. If you fail to do so, a default will be entered against you for the relief demanded in the complaint.

Witness, my hand and the seal of this Court on this **30th day of January, 2026**

PAM CHILDERS
CLERK OF THE CIRCUIT COURT

By: _____
    Deputy Clerk

\* Except when suit is brought pursuant to Section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to Section 768.28, Florida Statutes, the time to be inserted is 30 days. '

CASUM2053P

Filing # 240409834 E-Filed 01/27/2026 05:15:32 PM

IN THE CIRCUIT COURT IN AND
FOR ESCAMBIA COUNTY, FLORIDA

STEPHANIE JERNIGAN,

       Plaintiff,

vs.

OTIS ELEVATOR COMPANY,

       Defendant.

_____/

**CASE NO: 2026 CA 000151**
**DIVISION: F-CIVIL**

## COMPLAINT

Plaintiff, Stephanie Jernigan, by and through the undersigned counsel, sues Defendant, Otis Elevator Company, and alleges:

### Allegations Common to All Counts

1. This is an action for damages in excess of $50,000.00, exclusive of costs, interests, and attorneys' fees.

2. At all times material, Plaintiff was a resident of Santa Rosa County, Florida.

3. At all times material, Defendant Otis Elevator Company is a New Jersey registered corporation licensed to conduct business within the State of Florida and engaging and conducting business in Escambia County, Florida.

4. At all times material, Defendant solicited, operated, conducted, engaged in and carried on a business or business venture in Escambia County, Florida, derived substantial revenue from their goods used or leased within Escambia County, Florida, and committed tortious acts and omissions within Escambia County, Florida from which this cause of action arises.

5. At all times material, Defendant designed, manufactured, installed, obtained the licenses and certifications for, and maintained the elevators at Baptist Hospital Pensacola ("Baptist Hospital"), located at 123 Baptist Way, Pensacola, Escambia County, Florida 32503.

6. The elevators at Baptist Hospital were further tested, assembled, labeled, supplied, packaged, distributed, promoted, marketed, advertised, and sold or leased by Defendant.

7. At all times material, Defendant's above-referenced elevators were available for use by the public, Baptist Hospital's employees, guests, and tenants.

8. At all times material, Defendant further was under-contract to-perform elevator maintenance, care, and duties for the elevators at Baptist Hospital.

9. On or about February 1, 2024, Plaintiff was a business invitee of Baptist Hospital and Defendant's elevator within Baptist Hospital's main building.

10. At that time, Plaintiff was reasonably using or attempting to use one of Defendant's elevators, Elevator D, when the elevator malfunctioned.

11. Specifically, the elevator's doors closed on Plaintiff while she was entering the elevator, then failed to properly retract as Plaintiff was trapped within the elevator's doors.

12. The elevator doors closed on Plaintiff suddenly, unexpectedly, and without warning.

13. The elevator was used by Plaintiff in the same condition in which it had left the control and possession of Defendant, and in which it had been sold or leased and supplied to Baptist Hospital.

2

## COUNT I
## STRICT LIABILITY

14.    Plaintiff incorporates by reference and re-alleges the allegations set forth in Paragraphs 1 through 13 above as if fully set forth herein.

15.    The elevator, as designed, manufactured and sold by Defendant, was in a defective condition, unreasonably dangerous to its users or consumers.

16.    The elevator was unsafe when put to a use that was reasonably foreseeable; failed to perform in the manner reasonably to be expected in light of its nature and intended function; failed to match the average quality of like elevator products; was in a condition not contemplated by the ultimate users or consumers which is unreasonably dangerous to the users or consumers; and was designed without minimal safety measures that, because they were not taken, cause the elevator's potential dangers to outweigh the utility of the product as designed.

17.    The defects in the elevator include, but are not limited to:

a.    A defective design, given the probability and seriousness of the risks posed by the design, the minimal burden on Defendant to take the necessary steps to eliminate the risks posed by the design, and given that the foreseeable risks of harm posed by the elevator's design could have been reduced or avoided by the adoption of a reasonable alternative design, including such reasonable alternative designs as using more accurate, reliable, and available sensors, or designing other safety systems adequate to prevent the elevator's doors from closing on occupants;

3

b.      Defective testing and programming of its electronic sensors, including the failure to adequately test the performance of the elevator under conditions of use that were reasonably foreseeable;

c.      Defective warnings, instructions and labels that were insufficient, inadequate, and failed to reasonably warn as to the dangerous risks and hazards associated with the use of the elevator; and

d.      Defective manufacturing, in that in the absence of abnormal use or reasonable secondary causes, the elevator failed to perform in the manner reasonably to be expected in light of its nature and intended function.

18.     Defendant is strictly liable for the design, manufacturing, and testing defects, and its failures to adequately warn, instruct and label as set forth above.

19.     As a direct and proximate result of the elevator's design, manufacturing, and testing defects, and Defendant's failures to adequately warn, instruct and label the elevator, the elevator failed, causing severe injuries and damages to Plaintiff; including bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money. The losses are either permanent or continuing, and Plaintiff will suffer losses in the future.

## COUNT II
## NEGLIGENCE PER SE FOR DEFENDANT'S VIOLATIONS OF THE FLORIDA ELEVATOR SAFEFY ACT, §399.02, FLORIDA STATUTES

20.     Plaintiff incorporates by reference and re-alleges the allegations set forth in Paragraphs 1 through 13 above as if fully set forth herein.

21.     At all times material, Defendant was responsible by lease or contract with

4

Baptist Hospital for the elevator's compliance with the provisions of §399.02, Florida Statutes, a statute within the Florida Elevator Safety Act.

22. Pursuant to Defendant's lease or contract with Baptist Hospital and the provisions of §399.02, Florida Statutes, Defendant was responsible for the safe operation, proper maintenance, and inspection and correction of code deficiencies of the elevator after an elevator certificate of operation has been issued for the elevator by the Florida Department of Business and Professional Regulation.

23. Florida Statute §399.02(5)(b) establishes a duty upon Defendant to protect those using elevators from injury resulting from poor maintenance of the elevator.

24. Negligence per se results from the violation of a statute that seeks to protect a particular class of persons from a particular injury by establishing the duty to take precautions to avoid that injury.

25. Defendant was per se negligent and breached each of the above-referenced duties to Plaintiff by, among other acts and omissions:

    a. Failing to safely operate the elevator pursuant to §399.02(5)(b);

    b. Failing to properly maintain the elevator pursuant to §399.02(5)(b);

    c. Failing to reasonably inspect the elevator to ensure compliance with all requirements of §399.02; and

    d. Failing to correct code deficiencies of the elevator.

26. As a direct and proximate result of Defendant's failure to comply with §399.02(5)(b), Florida Statutes, the elevator failed, causing severe injuries and damages to Plaintiff; including bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of

5

hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money. The losses are either permanent or continuing, and Plaintiff will suffer losses in the future.

**COUNT III**
**NEGLIGENCE**

27.     Plaintiff incorporates by reference and re-alleges the allegations set forth in Paragraphs 1 through 13 above as if fully set forth herein.

28.     Defendant had *pre-sale duties* to use reasonable care in the design, manufacture, testing, inspecting, warning, distributing, sale, and production of the elevator.

29.     Defendant was negligent and breached each of the above-referenced duties to Plaintiff by, among other acts and omissions:

    a.     Failing to design and manufacture the elevator free of defects when used in a manner reasonably foreseeable in light of its nature and intended function.

    b.     Failing to adequately test the elevator to ensure that it would perform as intended and expected under normal or reasonably foreseeable use.

    c.     Failing to reasonably inspect the elevator and employ reasonable care to discover a dangerous design defect before placing the elevator into the stream of commerce.

    d.     Failing to adequately warn as to the dangerous risks and hazards associated with the use of the elevator, including, but not limited to,

6

failing to specify the risk presented by the elevator's doors closing suddenly or unexpectedly on its occupants.

e. Failing to warn of the elevator's defective condition or remedy the defective condition once a known or reasonably foreseeable risk of injury or death was learned by Defendant; and

f. Failing to timely repair or recall the elevator from the market once a known or reasonably foreseeable risk of injury or death was learned by Defendant.

30. Defendant further had *post-sale duties* to act as a reasonable person in inspecting, maintaining, operating, repairing, licensing, and certifying the elevator, and to warn foreseeable users of any dangerous propensity of its elevator of which Defendant had actual or constructive unequal knowledge, and for which Defendant was reasonably aware of and knew or should have known that harm might or could occur if no warning is given.

31. Defendant was negligent and breached each of the above-referenced duties to Plaintiff by, among other acts and omissions:

a. Failing to maintain the elevator in a reasonably safe condition.

b. Failing to reasonably inspect and test the elevator.

c. Failing to properly maintain the elevator.

f. Failing to timely and adequately repair, or cause another to repair, the elevator after having been advised of prior instances of malfunctioning.

g. Failing to reasonably perform the obligations of its lease of the

7

elevator with Baptist Hospital.

h.  Failing to reasonably train and supervise its employees who construct, assemble, install, inspect, test, and conduct maintenance on and certification for the elevator.

i.  Failing to reduce, minimize or eliminate foreseeable risks before they manifest themselves as particular dangerous conditions in or around the elevator.

j.  Failing to provide a reasonably safe place for elevator passengers.

k.  Failing to use reasonable care and diligence to protect from injury those patrons using the elevator, including Plaintiff.

l.  Failing to exercise reasonable care in the method of operation of its business with respect to the elevator's maintenance and certifications; and

m.  Failing to adequately warn Plaintiff and other foreseeable users of a dangerous propensity of the elevator of which Defendant had actual or constructive unequal knowledge, and for which it was reasonably aware of and knew or should have known that harm might or could occur if no warning is given.

32.  Defendant knew or should have known the elevator was defective prior to Plaintiff's injury.

33.  As a direct and proximate result of the negligent acts and omissions of Defendant, the elevator malfunctioned and failed to reasonably perform.

8

34.    Alternatively, and in the absence of direct proof of negligence at trial, at all times material the elevator was an instrumentality causing injury that was under the exclusive control of Defendant, and the accident was one that would not, in the ordinary course of events, have occurred without negligence on the part of Defendant, such that the doctrine of *res ipsa loquitur* is applicable.

35.    As a result of the negligence of Defendant, Plaintiff suffered bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money. The losses are either permanent or continuing, and Plaintiff will suffer losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendant for damages in excess of the Court's jurisdictional limits, exclusive of costs, interest and attorneys' fees, and further demands a trial by jury.

DATED this 27th day of January, 2026.

/s/ *Shane Dean*
SHANE M. DEAN
FL Bar No.: 499889
DEAN & CAMPER, P.A.
119 W. Garden St., Ste. 100
Pensacola, FL  32502
850-433-3077 – Phone
850-433-3057 - Fax
Attorneys for Plaintiff
Primary Designated Email Address:
shane@deancamper.com
Secondary Designated Email Address:
reception@deancamper.com

9

Filing # 240409834 E-Filed 01/27/2026 05:15:32 PM

IN THE CIRCUIT COURT IN AND
FOR ESCAMBIA COUNTY, FLORIDA

STEPHANIE JERNIGAN,

        Plaintiff,                        **CASE NO: 2026 CA 000151**

vs.                                  **DIVISION: F-CIVIL**

OTIS ELEVATOR COMPANY,

        Defendant.

_____/

## PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT

Plaintiff, STEPHANIE JERNIGAN, by and through the undersigned counsel and pursuant to Rule 1.370 of the Florida Rules of Civil Procedure, requests Defendant, OTIS ELEVATOR COMPANY, to answer the following requests for admissions within forty-five (45) days from the date hereof. If denied, please give a complete explanation for denial.

### DEFINITIONS

A.    As used herein, the terms "elevator" or "elevators" refer to "Elevator(s) D" within Baptist Hospital Pensacola's main building, located at 123 Baptist Way, Pensacola, Escambia County, Florida 32503.

B.    As used herein, the terms "elevator model" refers to model type of elevator(s) that are in "Elevators D" within Baptist Hospital Pensacola's main building, located at 123 Baptist Way, Pensacola, Escambia County, Florida 32503.

### REQUESTS

1.    Admit that OTIS ELEVATOR COMPANY is the properly named Defendant in this cause of action.

2.    Admit that, at the time of the incident that is the subject of this action, OTIS ELEVATOR COMPANY owned the elevator.

3.  Admit that, at the time of the incident that is the subject of this action, OTIS ELEVATOR COMPANY leased the elevator.

4.  Admit that, at the time of the incident that is the subject of this action, OTIS ELEVATOR COMPANY was responsible for certification of the elevator.

5.  Admit that, at the time of the incident that is the subject of this action, OTIS ELEVATOR COMPANY was responsible for maintenance of the elevator.

6.  Admit that, at the time of the incident that is the subject of this action, OTIS ELEVATOR COMPANY was responsible for inspection of the elevator.

7.  Admit that, at the time of the incident that is the subject of this action, OTIS ELEVATOR COMPANY was responsible for repairing the elevator.

8.  Admit that, at the time of the incident that is the subject of this action, OTIS ELEVATOR COMPANY was responsible for testing of the elevator.

9.  Admit that OTIS ELEVATOR COMPANY designed the elevator.

10.  Admit that OTIS ELEVATOR COMPANY manufactured the elevator.

11.  Admit that OTIS ELEVATOR COMPANY distributed the elevator.

12.  Admit that OTIS ELEVATOR COMPANY sold the elevator.

13.  Admit that OTIS ELEVATOR COMPANY leased the elevator.

14.  Admit that, at the time of the incident that is the subject of this action, OTIS ELEVATOR COMPANY was responsible for the elevator's compliance with Section 399, Florida Statutes.

15.  Admit that, at the time of the incident that is the subject of this action, OTIS ELEVATOR COMPANY was under contract to perform elevator maintenance, care, and duties for the elevator.

16.  Admit that on February 1, 2024, OTIS ELEVATOR COMPANY was negligent in the maintenance of the elevator that is the subject of this action.

17.  Admit that the negligence of OTIS ELEVATOR COMPANY referenced in Plaintiff's Complaint proximately caused the accident that is the subject of

this action.

18.    Admit that the negligence of OTIS ELEVATOR COMPANY referenced in Plaintiff's Complaint was the legal cause of injury to Plaintiff on February 1, 2024.

19.    Admit that Plaintiff was not responsible in any way for causing the accident on February 1, 2024, that is the subject of this action.

20.    Admit that Plaintiff was not responsible in any way for her injuries sustained in the accident on February 1, 2024.


## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a true and correct copy of the foregoing document has been served along with the Complaint in this matter by a duly licensed and authorized process server.

*/s/ Shane Dean*

SHANE M. DEAN
FL Bar No.: 499889
DEAN & CAMPER, P.A.
119 W. Garden St., Ste. 100
Pensacola, FL  32502
(850) 433-3077 – Phone
(850) 433-3057 - Fax
Attorneys for Plaintiff
Primary Designated Email Address:
shane@deancamper.com
Secondary Designated Email Address:
reception@deancamper.com

Filing # 240409834 E-Filed 01/27/2026 05:15:32 PM

IN THE CIRCUIT COURT IN AND
FOR ESCAMBIA COUNTY, FLORIDA

STEPHANIE JERNIGAN,

     Plaintiff,

vs.

                    **CASE NO: 2026 CA 000151**
                    **DIVISION: F-CIVIL**

OTIS ELEVATOR COMPANY,

     Defendant.

_____/

## PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANT

Plaintiff, by and through their undersigned counsel and pursuant to Rule 34 of the Florida Rules of Civil Procedure, requests Defendant to produce for inspection and/or copying the following documents in accordance with the following instructions and definitions:

## INSTRUCTIONS

A.    You are directed to separately identify and label the materials requested to correspond with the categories in the request.

B.    Unless an original is specifically requested, in lieu thereof you may produce a true and correct copy in legible condition.

C.    If objection is made to part of an item or category requested, you are directed to specify the part or category to which objection is made, state all grounds upon which the objection is made, and identify the legal basis for each objection.

## DEFINITIONS

A.    The term **"document"** as used herein refers to every writing, drawing, graph, chart, photograph, electronically recorded and stored material, digitally recorded and stored material, and other data compilations from which information may be obtained,

translated, if necessary, by the party to whom the request is directed into reasonably usable form, including but not limited to notes, contracts, letters, memoranda, messages, logs, diaries, forms, card files, journals, ledgers, computer printouts, tapes, discs, computer-stored data, facsimile (fax) reproductions, reports, statistical compilations, computations, pictures, minutes, manuals, pamphlets, and books of every nature.

B.      The term **"writing"** as used in this production request applies to all words, phrases, numbers, lines, and symbols, whether handwritten, printed, typed, photocopied, faxed, photographed, electronically recorded or digitally recorded.

C.      The term **"correspondence"** means the original or copy of any document or writing such as a letter, note card, E-mail, fax, computerized network message, or other written communication which was sent by one person or entity to another.

D.      The term **"statement"** as used in this production request refers to any communication reduced to a writing or record.

E.      The terms "**you**" or "**your**" refer to Otis Elevator Company and anyone acting for or on behalf of Otis Elevator Company.

F.      As used herein, the terms "**elevator**" or "**elevators**" refer to "elevator(s) D" within Baptist Hospital Pensacola's main building, located at 123 Baptist Way, Pensacola, Escambia County, Florida 32503.

G.      As used herein, the terms "**elevator model**" refers to model type of elevator(s) that are in "elevators D" within Baptist Hospital Pensacola's main building, located at 123 Baptist Way, Pensacola, Escambia County, Florida 32503.

2

## REQUESTS

1.    All contracts and agreements between you and Baptist Hospital Pensacola relating to your sale or lease of elevators to Baptist Hospital Pensacola. This includes, but is not limited to, the elevator that is the subject of this action.

2.    All product information documents relating to the elevator.

3.    All documents between you and any other person or entity, excluding your attorneys, that references or relates to the incident on February 1, 2024, that is the subject of this action, or of any injury or claimed injury to Plaintiff.

4.    All photographs of the elevator that is the subject of this action.

5.    All statements provided by Plaintiff in connection with the accident that is the subject of this action.

6.    All statements provided by any witness in connection with the accident that is the subject of this action.

7.    All repair records relating to the elevator that is the subject of this action, during the five years preceding the incident that is the subject of this action to the present.

8.    All documents relating to your policies and procedures for licensing, certifying, inspecting, and maintaining the elevator during the five years preceding the incident that is the subject of this action to the present.

9.    All warranties or similar guarantees issued or offered in connection with the sale or lease of the elevator.

10.    All documents relating to training or instruction given to any of your employees or agents involved in the installation, maintenance, inspection, and certification of the elevator.

11.    All contracts, requests, correspondence, memoranda, and specifications exchanged between you and any other person or entity with regard to the elevator, during the five years preceding the incident that is the subject of this action.

3

12.  All advertising literature or advertising media with respect to your marketing, sales, or lease of the elevator model, during the five years preceding the incident that is the subject of this action.

13.  All documents relating to any certifications, inspections or maintenance performed of or on the elevator during the five years preceding the incident that is the subject of this action.

14.  All documents establishing the elevator's compliance with Florida's Building Code and Section 399, Florida Statutes, during the five years preceding the incident that is the subject of this action.

15.  All product data sheets and bulletins relating to the elevator, during the five years preceding the incident that is the subject of this action.

16.  All documents relating to your quality control or quality assurance protocols and procedures utilized for the elevator doors or door sensors, during the five years preceding the incident that is the subject of this action.

17.  All documents relating to training or instruction given to personnel who performed quality control or quality assurance for you in connection with the elevator, during the five years preceding the incident that is the subject of this action.

18.  All policies of insurance that may provide coverage for the damages complained of in this action that was in force and effect on the date of the accident that is the subject of this action.

19.  All video, DVR, and other image recordings of the subject accident or depicting Plaintiff on the date of the accident.

20.  All documents which reflect reports or transmittal of data from you to any person or entity, including the Florida Department of Business and Professional Regulation, which relates to any consumer or user complaints, reports or suggestions about the subject elevator model's doors or door sensors not functioning properly or as expected, during the five years preceding the incident that is the subject of this action.

21.  All documents referencing or relating to any incident of injury to or death of a person while using or attempting to use one of the elevator models, or any other elevator model that has the same doors or door sensors and the subject elevator, during the five years preceding the incident that is the subject of this action. This request includes, but is in no way limited to, any

4

reports of such incidents to the Florida Department of Business and Professional Regulation or one of its departments.

22. All documents referencing or relating to any problem, failure, malfunction or defect in the elevator model, including its sensors, or any other elevator model that has the same doors or door sensors as the subject elevator, that did not result in any injury or death, during the five years preceding the incident that is the subject of this action. This request includes, but is in no way limited to, any reports of such incidents to the Florida Department of Business and Professional Regulation or one of its departments.

23. All documents or any other systems of information-keeping which documents, collects, maintains or stores in any fashion whatsoever, information relating to any complaint, report, or suggestion as to any defect in the elevator model's doors or sensors during the five years preceding the incident that is the subject of this action. All documents relating to warranty claims made with respect to the elevator model, including documents relating to your consideration, approval or denial of warranty claims during the five years preceding the incident that is the subject of this action.

25. All documents relating to the inspection by you, or anyone on your behalf, of an elevator within the elevator model that was the subject of any claimed or reported problem, failure, malfunction or defect in the doors or sensors during the five years preceding the incident that is the subject of this action.

26. All models, maps, drawings, photographs and videotapes depicting any claimed or reported problem, failure, malfunction or defect in the elevator model during the five years preceding the incident that is the subject of this action.

27. All documents which contain protocols, policies or procedures for document retention, destruction, or record keeping of any documents or records relating to the elevator.

28. The minutes of all meetings of your board of directors, beginning with the time that you first sold the elevator model and continuing to the present, in which any incident, complaint, report or suggestion as to any problem, failure, malfunction or defect in said elevator's doors or sensors was ever discussed, as well as all documents pertaining to same that were distributed at any meeting of your board of directors.

29. All deposition transcripts of your current or former employees taken in any case involving allegations of defectiveness or failure with respect to the elevator model.

5

30.    With respect to every person whom you reasonably anticipate to call as an expert witness at the trial of this action, please produce a copy of every scholarly book, treatise, article, professional journal article, or other writing subject to peer review, and all other learned works of a scientific or technical nature written in whole or in part by the person designated.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been served along with the Complaint in this matter by a duly licensed and authorized process server.

/s/ Shane Dean
SHANE M. DEAN
FL Bar No.: 499889
DEAN & CAMPER, P.A.
119 W. Garden St., Ste. 100
Pensacola, FL   32502
850-433-3077 – Phone
850-433-3057 - Fax
Attorneys for Plaintiff
Primary Designated Email Address:
shane@deancamper.com
Secondary Designated Email Address:
reception@deancamper.com

6

Filing # 240409834 E-Filed 01/27/2026 05:15:32 PM

IN THE CIRCUIT COURT IN AND
FOR ESCAMBIA COUNTY, FLORIDA

STEPHANIE JERNIGAN,

        Plaintiff,

vs.

                    **CASE NO: 2026 CA 000151**
                    **DIVISION: F-CIVIL**

OTIS ELEVATOR COMPANY,

        Defendant.

_____/

## PLAINTIFF'S COUNSEL'S DESIGNATION OF EMAIL ADDRESSES

Plaintiff's counsel, Shane M. Dean, of the firm Dean & Camper, P.A., pursuant to Fla. R. Jud. Admin. 2.516(b)(1)(A), hereby designates the following primary and secondary email addresses for email service of pleadings and documents in the above referenced case:

Primary email address:           shane@deancamper.com

Secondary email address:       reception@deancamper.com

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a true and correct copy of the foregoing document has been served along with the Complaint in this matter by a duly licensed and authorized process server.

/s/ *Shane Dean*
SHANE M. DEAN
FL Bar No.: 499889
DEAN & CAMPER, P.A.
119 W. Garden Street
Pensacola, FL 32502
(850) 433-3077 – Phone
(850) 433-3057 - Fax
Attorneys for Plaintiffs
Primary Designated Email Address:
shane@deancamper.com
Secondary Designated Email Address:
reception@deancamper.com

Filing # 240409834 E-Filed 01/27/2026 05:15:32 PM

IN THE CIRCUIT COURT IN AND
FOR ESCAMBIA COUNTY, FLORIDA

STEPHANIE JERNIGAN,

        Plaintiff,

vs.

OTIS ELEVATOR COMPANY,

        Defendant.

_____/

**CASE NO: 2026 CA 000151**
**DIVISION: F-CIVIL**

## PLAINTIFF'S NOTICE OF SERVICE OF FIRST INTERROGATORIES TO DEFENDANT

You are notified that Plaintiff, by and through the undersigned counsel, has served

the original and one copy of Plaintiff's First Set of Interrogatories to Defendant, to be

answered under oath pursuant to Rule 1.340, Florida Rules of Civil Procedure, with a

copy of this notice, along with the Complaint which is being served by a duly licensed and

authorized process server.

*/s/ Shane Dean*
SHANE M. DEAN
FL Bar No.: 499889
DEAN & CAMPER, P.A.
119 W. Garden St., Ste. 100
Pensacola, FL 32502
Telephone:   (850) 433-3077
Facsimile:   (850) 433-3057
Attorneys for Plaintiff
Primary Designated Email Address:
shane@deancamper.com
Secondary Designated Email Address:
reception@deancamper.com

IN THE CIRCUIT COURT IN AND
FOR ESCAMBIA COUNTY, FLORIDA

STEPHANIE JERNIGAN,

      Plaintiff,

vs.

                                        **CASE NO: 2026 CA 000151**
                                        **DIVISION: F-CIVIL**

OTIS ELEVATOR COMPANY,

      Defendant.

_____/

## **PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANT**

Plaintiff, by and through the undersigned counsel and pursuant to Rule 1.340, Florida Rules of Civil Procedure, propound the following interrogatories to Defendant to be answered in writing and under oath in accordance with the following instructions and definitions:

## **INSTRUCTIONS AND DEFINITIONS**

A.    As used herein, the word "document" or "documents" includes any written, printed, recorded or graphic matter or sound reproduction, however produced or reproduced, of any kind, including, but not limited to, the original or any coy of correspondence, records, memoranda, data, notes, communications, messages, telegrams, minutes, reports, schedules, tables, graphs, charts, books, accounts, vouchers, bills, statements, journals, ledgers, checks, invoices, contracts, agreements, orders, diaries, photographs, films, film strips and magnetic or other recorded tapes, however produced or reproduced, which are in your possession, custody or control.

B.    As used herein, the word "person" means an individual, corporation, partnership, joint venture, group, association, body, politic, governmental agency or unit, or any other organization.

C.    To "identify a person" or equivalent language, as the term is used herein means to state the person's name, last known address, and if employed, his job title or position, together with the name and address of his employer. The words "person" or "persons" include not only natural persons, but also firms, partnerships, associations and corporations.

D.    To "identify a document" and/or "written communication" or equivalent language means to state the following with respect to that document or communication:

(1)    The identity of the person who signed it or whose name it was issued;

(2)    The identity of each person to whom it was addressed and distributed;

(3)    Its date, and if it bears no date, the date it was prepared; and

(4)    The contents or substance of the information transmitted in the document.

E.    To "identify an oral communication" or a "conversation" or equivalent language when used herein means to state the following with respect to that oral communication:

(1)    The identity of each person who participated in the communication and/or who was present at the time it was made, indicating the person to whom the communication was made and the person making the communication;

(2)    The date and the place where such oral communications were made;

(3)    Whether such communications were made in person or by telephone;

(4)    The contents or substance of what was said by each person participating in the communication; and

3

(5) The identity of each document in your possession, custody or control which pertains or refers to such oral communication.

F. With respect to each interrogatory, in addition to supplying the information requested, you are requested to identify all documents that support, refer to, or evidence the subject matter of each interrogatory and your answer thereto. If any or all documents identified herein are no longer in your possession, custody or control because of destruction, loss or any other reason, then do the following with respect to each and every document:

(1) Describe the nature of each document, e.g. letter or memorandum;

(2) State the date of the document;

(3) Identify the persons who sent and received the document;

(4) State in as much detail as possible the contents of the document;

(5) State the manner and date of disposition of the document.

G. As used herein, the terms "you" or "your" refer to Defendant Otis Elevator Company and any person, organization or entity acting for or on its behalf, including any attorneys, and each and every other person, organization or entity acting on behalf of Defendant Otis Elevator Company.

H. As used herein, the terms "elevator" or "elevators" refer to "Elevator(s) D" within Baptist Hospital Pensacola's main building, located at 123 Baptist Way, Pensacola, Escambia County, Florida 32503.

I. As used herein, the terms "elevator model" refers to model type of elevator(s) that are in "Elevators D" within Baptist Hospital Pensacola's main building, located at 123 Baptist Way, Pensacola, Escambia County, Florida 32503.

4

## INTERROGATORIES

1.  Please state the name, title, and address of the person answering these interrogatories, and, if more than one person, please specify the interrogatory each person answered.

2.  Please list the names, addresses, and telephone numbers of all persons who are believed or known by you, or anyone acting on your behalf, to have any knowledge concerning any of the issues in this lawsuit and specify the subject matter of the knowledge each witness has. Please include in your answer:

    (a)    The relationship, if any, to you of any such persons acting on your behalf; and,

    (b)    If the person is no longer employed by you, his or her last known address and phone number.

3.  Describe any and all policies of insurance which you contend cover or may cover you for the allegations set forth in the Complaint, detailing as to such policies the name of the insurer, the number of the policy, the effective dates of the policy, the available limits of liability, and the name and address of the custodian of the policy.

4.  Has any investigation been made by you or anyone acting on your behalf of the incident alleged in Plaintiffs' claims? If so, please state:

    (a)    The name and address of each such person or entity conducting such investigation and the date or dates thereof;

    (b)    If the results of such investigation have been reduced to writing, and if so, when, where, and by whom such writing was made and the name and address of each person or entity now having possession or custody thereof;

    (c)    Whether you possess a copy of any such investigation, and if so, which one?

5

5.  Please state whether you or anyone acting on your behalf has secured, obtained, or has any knowledge of any statement or account made by any person (including parties), whether written, recorded, or oral, which pertains in any way to the occurrence made the basis of this action. If so, with respect to each statement or account, please state:

    (a)  The name and address of the person who made it;

    (b)  The name and address and job description of the person who obtained it;

    (c)  The name, address and job description of the person who currently has custody of it; and

    (d)  Whether it was written, recorded, and signed.

6.  Please state the facts upon which you rely for each affirmative defense in your answer.

7.  Beginning with the time that you first sold or leased the subject model elevator and continuing to the present, identify, by applicable time period, the person(s) who had primary responsibility for and the most knowledge of each phase of the following:

    (a)  Testing of the elevator;

    (b)  Marketing of the elevator;

    (c)  Sales or lease of the elevator; and

    (d)  Complaints about the elevator.

8.    With respect to the subject elevator, please state:

    (a)    The date(s) it was installed, sold, or leased, and the identity of all persons and entities known or believed by you to have been involved in its installation and lease; and

    (b)    The identity of every document relating to its installation, sale, or lease, including any lease agreements, receipts, purchase orders, bills of sales, and invoices.

9.    Has any report been made by you, or any other person, to any state or federal agency relating to the subject elevator or subject elevator model? If so, with respect to each such report, please state:

    (a)    The person making the report;

    (b)    The person or official to whom the report was made;

    (c)    The date of the report;

    (d)    Whether the report was oral or written;

    (e)    The office or place where the report or an account thereof is now located; and ·

    (b)    Whether you possess a copy of any such report, and, if so, which one(s).

10.    Beginning with the time that you first sold or leased the subject elevator model, and continuing to the present, please describe your policies, procedures and practices in regard to complaints, reports or suggestions of any problems, difficulties, flaws, failures or potential defects concerning the elevator model, including:

    (a)    How information communicated to you was recorded, collected, compiled, maintained, summarized and reported;

7

> (b)     Any changes to these policies, practices and procedures, with applicable dates and the reasons for such changes; and
>
> (c)     The identity of the person most knowledgeable in regard to the handling or processing of such complaints, reports or suggestions.

11.     Have you, during the last ten (10) years, become aware of the existence of incidents in which a user of the subject elevator model has been or claimed to have been injured or killed while using, attempting to use, or by reason of using, said elevator? If so, for each such incident, please state:

> (a)     When and where it occurred;
>
> (b)     The name and address of the person injured or killed;
>
> (c)     A general description of the injuries or death;
>
> (d)     The date on which and the manner by which the incident first came to your attention;
>
> (e)     Whether the incident was the subject of a claim or lawsuit for personal injuries or wrongful death;
>
> (f)     The result and disposition of any such claim or lawsuit for personal injuries or wrongful death;
>
> (g)     Identify by author, date and general description, all documents in your possession or subject to your control relating to such incidents, or to claims or lawsuits arising from them, together with the name and address of the present custodian of any such record; and
>
> (h)     The details of your procedures or company channels for the receipt, review, processing and retention of correspondence or other documents received by you which relate to such accidents or claims or lawsuits arising from them, including the name, address and job title of all persons involved in the distribution chain of such documents.

8

12. Did you, prior to February 1, 2024, become aware of any actual or potential danger, hazard, failure, malfunction or defect in the subject elevator model? If so, please state for each:

    (a) The nature of the actual or potential danger, hazard, failure, malfunction or defect;

    (b) When you became aware of it; and

    (c) Whether you ever warned anyone of it, and, if so, the nature of the warning, the date of the warning, and to whom each such warning was given.

13. Have you, since February 1, 2024, become aware of any actual or potential danger, hazard, failure, malfunction or defect in the subject elevator model? If so, please state for each:

    (a) The nature of the actual or potential danger, hazard, failure, malfunction or defect;

    (b) When you became aware of it; and

    (c) Whether you ever warned anyone of it, and, if so, the nature of the warning, the date of the warning, and to whom each such warning was given.

14. Have you, during the last ten (10) years, become aware of the existence of any incident, complaint, report or suggestion of any problem, difficulty, flaw, failure or potential defect in the doors or door sensors in the subject elevator model, including, but not limited to, the elevator doors closing pre-maturely on an occupant, hitting an occupant, or temporarily trapping an occupant for any reason? If so, for each please state:

    (a) When and where it occurred;

    (b) The name and address of the person who reported it;

(c)    A general description of it;

(d)    The date and manner by which it first came to your attention; and,

(e)    Identify by author, date and general description all documents in your possession or subject to your control relating to it, together with the name and address of the present custodian of any such documents.

15.    Please state whether you or anyone acting on your behalf participated in any corrective action plan, recall, retrofit campaign or similar activity involving the subject elevator. If so, please state separately and severally as to each:

(a)    The date the corrective action plan, recall or retrofit activity began;

(b)    The purpose of the corrective action plan, recall or retrofit campaign; and

(c)    All models involved in the corrective action plan, recall or retrofit campaign.

16.    Beginning with the time that you first sold the subject model elevator to any person or entity and continuing to the present, please describe your policies, procedures and practices in regard to the obtaining and maintaining of a record of the names, addresses, e-mail addresses, or other contact information of consumers or users to whom you sold or leased the elevator, including:

(a)    How such consumer or user information was recorded, collected, compiled, maintained, summarized and reported;

(b)    Any changes to these policies, practices and procedures, with applicable dates and the reasons for such changes; and

(c)    The identity of the person most knowledgeable in regard to the obtaining and maintaining of such consumer information.

10

17.  Beginning with the time that you first sold the subject model elevator and continuing to the present, please state:

(a)  The total number of such elevators sold by you;

(b)  The total number of such elevators returned to you by customers or consumers; and

(c)  The total number of such elevators exchanged through you by customers or consumers.

18.  Please describe in detail all of your protocols, policies or procedures for document retention, destruction, or record keeping of any documents or records relating to Elevators.

19.  Please describe all documents of communications between you and Baptist Hospital Pensacola, or anyone acting on its behalf, relating to the elevator at Baptist Hospital Pensacola.

**OTIS ELEVATOR COMPANY**

BY: _____

ITS: _____

STATE OF _____
COUNTY OF _____

    The foregoing instrument was acknowledged before me this _____ day of _____, 2026, by _____, who affirmed that he/she provided the answers to the foregoing Interrogatories and that said answers are true and correct to the best of his/her knowledge or belief.   He/She is personally known to me or who has produced _____ as identification and did/did not take an oath.

[SEAL]

_____
Notary Public
Printed Name:_____
Commission Number:_____
My Commission Expires:_____

12

Filing # 240409834 E-Filed 01/27/2026 05:15:32 PM

IN THE CIRCUIT COURT IN AND
FOR ESCAMBIA COUNTY, FLORIDA

STEPHANIE JERNIGAN,

        Plaintiff,

vs.

OTIS ELEVATOR COMPANY,

        Defendant.

_____/

**CASE NO: 2026 CA 000151**
**DIVISION: F-CIVIL**

### PLAINTIFF STEPHANIE JERNIGAN'S RULE 1.280 INITIAL DISCLOSURES

Plaintiff, STEPHANIE JERNIGAN, by and through the undersigned counsel,

submits the following initial disclosures pursuant to Rule 1.280 of the Florida Rules of

Civil Procedure:

(i) **The name and, if known, the address and telephone number of each individual likely to have discoverable information - along with the subjects of that information - that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment:**

### EXPERT WITNESSES

1. Touchstone Imaging
   4996 N Davis Highway
   Pensacola, FL 325044
   (850) 332-4414
   The radiologist at Touchstone Imaging is a treating radiologist and is not a retained expert. The subject matter of his testimony will include Plaintiff's medical treatment and injuries, including, but not limited to, Plaintiff's herniated discs in her neck, opinions as to the causation of Plaintiff's herniated discs from the accident, and future prognosis and treatment. The testimony will be based on education, training and experience as a treating radiologist, as well as treatment of Plaintiff.

2. Dr. James L. West, M.D.
   The Orthopaedic Group
   6144 Airport Blvd
   Mobile, Alabama 36608
   (251) 476-5050

Dr. West is a treating orthopedic surgeon and not a retained expert. The subject matter of his testimony will include Plaintiff's medical treatment and injuries from the accident, including opinions as to the causation of Plaintiff's injuries from the accident, Plaintiff's neck surgery, and future prognosis and treatment. His testimony will be based on his education, training and experience as a treating orthopedic surgeon, as well as his treatment of Plaintiff.

## NON-EXPERT WITNESSES

1.    Stephanie Jernigan (Plaintiff)
5571 Allentown Road
Milton, FL 32570
(850) 433-3077
Ms. Jernigan is the Plaintiff is this matter. The subject matter of her testimony will include her knowledge of the accident and her injuries, treatment, pain and suffering, medical bills, and damages resulting from the accident.

2.    Billie VonWie (Witness)
Address unknown (TBD)
Ms. VonWie is believed to be a witness to the accident. The subject matter of her testimony will include her knowledge of the accident.

4.    All healthcare providers who provided services to Plaintiff.

5.    All necessary records custodians (if required by the Court).

6.    All necessary rebuttal witnesses.

7.    Any witnesses necessary to authenticate exhibits.

(ii)    **A copy or a description by category and location of all documents, electronically stored information, and tangible things Plaintiff has in Plaintiff's possession, custody or control of may use to support Plaintiff's claims or defenses, unless the use would be solely for impeachment:**

1.    Medical records and bills for all treatment of Plaintiff, including all providers and facilities referenced in Plaintiff's medical bill summary provided below.

2.    Diagnostic studies and records or related reports of Plaintiff, including, without limitation, x-rays, CT scans, and MRIs.

3.    Medical Bill Summary (See below).

2

4.    The Department of Business and Professional Regulations elevator licenses and certifications.

5.    The incident report.

6.    Photographs or videos of the accident scene.

7.    Photographs or videos of the elevator involved in the accident.

8.    Receipts of out-of-pocket expenses of Plaintiff.

9.    Plaintiff's mileage records.

10.    Mortality tables and/or life tables.

11.    AMA Guidelines.

**(iii)    Computation of each category of damages claimed by Plaintiff:**

Bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. It is anticipated that Plaintiff's medical expense will continue to rise as additional bills are received and additional treatment is incurred. Based upon the information currently in Plaintiff's possession, Plaintiff has incurred at least the following past medical expenses to date:

| Provider | Dates of Service | Charges | W.C. Lien Payments |
|---|---|---|---|
| Misc Medical | 2/1/24 - 6/12/24 | | $2,389.48 |
| Adva Net - Paradigm Mgmt. | 2/1/24 - 5/29/25 | | $2,609.87 |
| Pensacola ER Physicians | 02/01/24 | | $130.15 |
| Ascension SHH | 2/8/24 - 5/17/24 | | $472.94 |
| Radiology | 02/28/24 | | $217.00 |
| Express Scripts | 02/28/24 | | $29.59 |
| Doctor | 8/26/24 - 2/5/25 | | $3,503.00 |
| Pharmacy | 8/26/24 - 2/5/25 | | $225.03 |
| Baptist Hospital | 3/4/24 & 4/8/24 | | $587.00 |
| ECRA Case Management | 05/14/24 | | $1,152.93 |
| Dr. Christo Koulisis, M.D. | 05/20/24 | | $164.70 |
| WFMCC | 4/16/24 & 8/28/24 | | $748.56 |
| X-ray/MRI/CT/EMG | 12/4/24 - 3/7/25 | | $1,088.30 |
| OCM FN LLC | 12/4/24 & 3/7/25 | | $980.00 |
| The Orthopedic Group | 12/19/24 - 2/5/25 | | $3,294.76 |
| Surgeon | 2/5/25 & 5/29/25 | | $3,178.70 |

3

| | | | |
|---|---|---|---|
| Emcompass | 5/5/25 - 8/26/25 | | $6,510.30 |
| TMESYS | 5/20/2025 & 8/8/25 | | $210.76 |
| Freestanding Ambulatory Surgery | 05/29/25 | | $1,718.74 |
| The Center for Pain | 05/29/25 | | $222.30 |
| One Call Med | 07/08/25 | | $589.00 |
| Mobile Surgery Center | 08/26/25 | | $43,714.30 |
| Anesthesiologists | 08/26/25 | | $477.74 |
| | | | $74,215.15 |
| | | | |
| Wages | 2/4/24 -12/24/25 | | $  18,888.10 |
| Misc | | | $      424.00 |
| | | | |
| | | | $  19,312.10 |
| | | | $ 93,527.25 |

Future medical expenses will be provided by Plaintiff's physicians or through expert testimony. These amounts have not yet been determined. Plaintiff also intends to seek substantial non-economic damages, but the specific amount has not been calculated. Plaintiff anticipates calculating varying amounts at trial. Ultimately, Plaintiff's non-economic damages will be determined by the jury. Plaintiff reserves the right to supplement or amend these damages disclosures as treatment and discovery develop. Plaintiff incorporates herein by reference any and all documents disclosed in any subsequent supplements, written discovery responses, expert reports, or depositions in this case.

(iv)    **Insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment.**

N/A.

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been served along with the Complaint in this matter by a duly licensed and authorized process server.

/s/ Shane Dean

SHANE M. DEAN
FL Bar No.: 499889
DEAN & CAMPER, P.A.
119 W. Garden St., Ste. 100
Pensacola, FL  32502
850-433-3077 – Phone
850-433-3057 - Fax
Attorneys for Plaintiff
Primary Designated Email Address:
shane@deancamper.com
Secondary Designated Email Address:
reception@deancamper.com

5